## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAHARA LOGAN, on behalf of herself and all others similarly situated, | ) ) ) Civil Action No.: |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS/COLLECTIVE ACTION** ) **COMPLAINT** ) |
| KIMBERLY DERSTINE, individually and d/b/a SABEL'S SHOWBAR a/k/a GASLIGHT PUB a/k/a SABEL'S GASLIGHT PUB, BRANDEVJOR, INC., an unknown business entity d/b/a SABEL'S SHOWBAR a/k/a GASLIGHT PUB a/k/a SABEL'S GASLIGHT PUB and DOE DEFENDANTS 1-10. | ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Sahara Logan ("Logan" or "Plaintiff"), individually and on behalf of all similarly situated employees, brings this Class/Collective action lawsuit against Defendants Kimberly Derstine, Brandevjor, Inc., and Doe Defendants 1-10 (Collectively, "Defendants") seeking to recover for Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, and the Pennsylvania common law. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1.      As explained herein, under applicable employment laws all employees are entitled to a defined minimum wage and premium overtime compensation for all hours worked in excess of forty in a given work week (unless the employee is determined to be exempt), and are protected from having improper deductions taken from their wages, including their tips.

However, Defendants (as defined herein) improperly classified Plaintiff and other exotic entertainers ("Dancers") as "independent contractors." Consequently, Defendants failed to pay Dancers at least the applicable minimum wage. In addition, Defendants required Dancers to work in excess of forty hours per work week, and then failed to pay them premium overtime compensation. Further, Defendants improperly collected a portion of the tips Plaintiff and other Dancers receive from customers. As set forth herein, such conduct is in violation of applicable state and federal wage and hour laws.

2.      Dancers who work, or have worked, for Defendants, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners. *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L. 465, 466 (1999).

3.      Accordingly, adult entertainment clubs such as those operated by Defendants are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

4.      Over the past two decades, the United States Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

5.      Despite these significant strides, adult night clubs across the country still routinely deny Dancers the basic protections they are accorded under state and federal law. Indeed, Defendants' Clubs are no exception. As set forth herein, Defendants' Clubs regularly deprive Dancers of their rights under federal law, as well as the laws of Pennsylvania and New Jersey. Plaintiff brings this lawsuit to address these improper pay practices.

**SUMMARY OF CLAIMS**

6.      Plaintiff brings this action as a collective action to recover unpaid wages, including inappropriately withheld tips, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

7.      In particular, Plaintiff brings this suit, pursuant to Section 216(b) of the FLSA, on behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendants within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Nationwide FLSA Class").

8.      In addition, Plaintiff also brings this action as a Pennsylvania state-wide class action to recover unpaid wages, including inappropriately withheld tips, pursuant to the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("WPCL"), and Pennsylvania common law (the "PA State Laws").

9.      Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

10.     Plaintiff alleges on behalf of the Nationwide FLSA Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to pay the mandatory minimum wage; (ii) entitled to unpaid overtime wages for all hours worked in excess of forty in a work week; (iii) entitled to the tips that Defendants withheld from them, in violation of 29 U.S.C. § 203(m)(2)(B); and (iv) entitled to liquidated damages pursuant to  29 U.S.C. § 216(b).

11.     Plaintiff alleges on behalf of the PA Class that Defendants violated the PA Laws by, *inter alia*: (i) failing to pay Dancers the appropriate minimum wages for all hours worked;

(ii) improperly denying Dancers overtime wages for all hours worked in excess of forty hours in a work week; and (iii) inappropriately withholding and/or deducting unlawful amounts from the tips earned by the PA Class.

**PARTIES**

12.    Plaintiff Sahara Logan is a resident and citizen of the Commonwealth of Pennsylvania who was employed by Defendants as a "Dancer" at Sabel's Showbar a/k/a Gaslight Pub a/k/a Sabel's Gaslight Pub (Collectively, "Sabel's") located at 3979 West Ford Road, Philadelphia, Pennsylvania, from the beginning of November 2017 and working at various times until she was terminated at the end of March 2018.

13.    While employed by Defendants, Plaintiff was improperly classified as an independent contractor and, consequently, Defendants failed to compensate Plaintiff properly for all hours worked.

14.    Plaintiff consents in writing to be a Plaintiff in this action and has filed her executed Consent to Sue form.

15.    Defendant Brandevjor, Inc., d/b/a Sabel's Showgirls a/k/a Gaslight Pub a/k/a Sabel's Gaslight Pub is a Pennsylvania Corporation with its headquarters located at 38 Centennial Road, Telford, Pennsylvania 18969. Upon information and belief, Brandevjor, Inc. owns and operate Sabel's Showgirls a/k/a Gaslight Pub a/k/a Sabel's Gaslight Pub located at 3979 West Ford Road, Philadelphia, Pennsylvania 19131.

16.    Defendant Kimberly Derstine is an officer of Brandevjor, Inc., which owns and operates the commercial establishment doing business as Sabel's Showbar a/k/a Gaslight Pub a/k/a Sabel's Gaslight Pub. Sabel's Showbar a/k/a Gaslight Pub a/k/a Sabel's Gaslight Pub operates at 3979 Ford Street, Philadelphia, Pennsylvania 19137.

4

17.    Upon information and belief, at all relevant times, Defendants' annual gross volume of sales made or business done was not less than $500,000.00.

18.    At all relevant times Defendants have transacted business, including the employment of Dancers, within the Commonwealth of Pennsylvania, including within this district.

19.    Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff.

20.    Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of the Defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned conspiracy. Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

## **JURISDICTION AND VENUE**

21.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

22.    This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class, including Plaintiff Logan, have a different citizenship from Defendants; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

23.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

25.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

26.     The crux of the FLSA and PA State Laws are, *inter alia*,: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to premium overtime compensation for all hours worked in excess of forty hours per work week; and (iii) that all tips earned by an employee are the property of the employee and may not be withheld by the employer.

27.     Contrary to these basic protections, Defendants' Clubs improperly classify its Dancers, including Plaintiff, as "independent contractors" despite Defendants' near total control over them.  Consequently, Dancers are, and have been:  (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of forty hours per work week; (iii) forced to improperly share a percentage of their tips with Defendants' Clubs; and (iv) forced to reimburse Defendants' Clubs for their ordinary business expenses.

28.     Plaintiff and the members of the Classes are, or were, Dancers who worked at Defendants' location at 3979 West Ford Road, Philadelphia, Pennsylvania operating under the name "Sabel's Showbar," a/k/a "Gaslight Pub" a/k/a "Sabel's Gaslight Pub."

6

29.     Defendants operate Sabel's under uniform policies applicable to all the members of the Classes.   Through these policies and procedures, Defendants maintain significant supervision and control over Plaintiff and members of Classes.

30.     Notwithstanding Defendants' classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendants have over their Dancers, Dancers are legally Defendants' employees.

### Hiring, Firing, and Scheduling

31.     Defendants have the power to hire and fire Dancers at will, and have rules governing the conditions under which Dancers work.

32.     Defendants' Clubs require Dancers to schedule their shifts in advance.   Although Dancers are allowed to request specific shifts, Defendants' Clubs management exercises complete control over the final schedule.   Defendants' Clubs can require certain Dancers to work particular shifts and can for any reason deny a Dancer's request to work a particular shift. By way of example, Defendants' require Dancers to work one Sunday a month.

33.     Dancers may not voluntarily stay to work beyond their scheduled shift without express permission from Defendants' managers. If they do not receive express permission, a Dancer will be fined.

34.     Dancers are subject to discipline in the forms of fines and possible termination if they do not arrive for a shift at the predetermined time.

35.     Plaintiff's schedule varied during the course of her employment, though she typically tried to work every day.

36.     On several occasions, Plaintiff worked more than forty hours in a given workweek. Despite this, Defendants did not pay her overtime wages.  Indeed, Defendants never

7

pay minimum or overtime wages to any Dancers, regardless of the number of hours the Dancers work.

37.    Dancers are required to check in with the Club's DJ as soon as they arrive for their shift.  They must report to the main floor by their scheduled start time or they will be assessed additional fees.

38.    Defendants' scheduling policy also requires that all Dancers stay until the end of their shift, under threat of fines or termination.  Incredibly, even if a Dancer falls ill during a shift, she will not be permitted to leave the club immediately unless she received permission from the manager on duty. Often times, the manager would tell the Dancer she was not permitted to work the following day.

39.    When the club closes at 2:00 am, all Dancers must remain in the dressing room until club management gives them permission to leave. The Dancers are not compensated in any way for the time they spend waiting to leave.

### House Fees & Fines

40.    Rather than pay its Dancers the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants classifies their Dancers as independent contractors and requires their Dancers to pay Defendants in order to work at Defendants' establishment.  Consequently, Defendants do not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked.

41.    Despite routinely charging customers a "cover fee" at the door and selling alcohol, Defendants retain all of that income and do not pay Dancers any wages.

42.    Typically, there are "House Fees" for each shift worked.  During week days, Dancers are required to pay a fee of $30. This fee increases by $10 every hour after 6:00 p.m. During weekends, Dancers are required to pay a flat fee of $80.

43.    Dancers are also assessed fines on a discretionary basis by the club manager. These fines are determined by how the club manager feels the attitude of the Dancer is on a particular night. If the club manager determines that the Dancer has a bad attitude, the Dancer will be fined.

44.    Dancers must pay all fees every night they work regardless of the amount of tips they receive during their shift.  Accordingly, a Dancer must pay the fees even if that means borrowing money from another Dancer or using an ATM machine.  Defendants' system of fees, fines, and mandatory tips creates a realistic possibility that a Dancer may finish a shift with a negative balance, owing Defendants money from the Dancer's personal finances and taking home zero dollars for a day or night of work.

45.    Dancers are not permitted to perform and face termination if they have any outstanding fees or fines.  Indeed, Defendants maintain a list of all Dancers and the current fines owed.

### Tip Retention & Mandatory Tip Outs

46.    Tips received by an employee belong to the employee and an employer has no ownership interest in said tips.  Section 203(m)(2)(B) of the FLSA specifically provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  According to the DOL's regulations, "[t]ips are the property of the

employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."
29 C.F.R. § 531.52.

47.    Despite the law's clear requirements, Defendants unlawfully retain a portion of
tips Dancers received from Defendants' customers.

48.    Moreover, Defendants also mandate the fees a Dancer must charge customers for
her services.  By way of example, Defendants maintains a policy establishing the amount a
Dancer is required to charge for private performances.

49.    Dancers are required to pay Defendants $20 for use of the private dance room, the
Dancer then must charge $20 for each dance in the room, however, after the initial $20 fee, she is
entitled to keep the profits.

50.    Defendants also subjects Dancers to mandatory tip-outs.  That is, Dancers are
required to share their tips with certain of Defendants' employees.  Importantly, the individuals
with whom Defendants requires its Dancers to share their tips do not provide customer service or
receive tips themselves.

51.    Upon information and belief, Defendants uses these mandatory Dancer tip-outs to
offset Defendants' ordinary business expenses.  Stated another way, Defendants require Dancers
to share their tips with individuals so that Defendants can then reduce their labor costs by having
the Dancers supplement the compensation Defendants pay their other employees.

52.    Defendants have a *mandatory* tip out policy whereby Dancers must each pay a
minimum of (i) $10 to the club's DJ, per shift. If the DJ does not feel adequately tipped, the
Dancers will be subject to bad music during their performances, and (ii) $5 to the club's security,
per shift.

53.     The aforementioned amounts are the required minimum tip-outs, and Defendants require Dancers to pay all tips by the end of their shift, regardless of how much money the Dancer has earned during the shift.

54.     Dancers often felt pressured and controlled by the managers and floormen at Defendants' club. Plaintiff and other Dancers believed managers and floormen were closely monitoring all of their transactions. In doing so, they pressure the Dancers to tip them accordingly based on their nightly earnings and private dances. If a Dancer has outstanding fines, she is pressured to work more in order to repay her fines.

55.     As a result of the mandatory house fees, required tip-outs, and assessed fines, Dancers sometimes receive little to no actual compensation despite hours of work.

**Additional Control**

56.     As described below, Defendants exercise significant control over the Dancers' work environment through a variety of policies and rules.

57.     Defendants require Dancers to wear certain types of clothes. Dancers are required to have their hair and makeup done, to look nice for their performances, and additionally were required to wear dancer shoes during all of their performances. Defendants exercise authority over Dancers' apparel by refusing to let a Dancer perform if her clothing does not meet Defendants' requirements. Defendants do not reimburse Dancers for the cost of their apparel. In addition, Defendants do not pay for the cost of laundering or maintaining these required outfits.

58.     By way of example, on Friday and Saturday, Defendants require Dancers to wear "Bling Attire" which means a dancer must wear rhinestones and other items that sparkle. On Sundays, Dancers are required to wear sports attire such as a sports jersey.

59.    A Dancer's stage performance must comply with certain rules set by Defendants. Dancers were required to go on a stage rotation when called by the DJ. The club's DJ controls the songs played. Although Dancers can ask for a certain type of music, the DJ exercises full and final control over the music selection. In many cases, a Dancer is forced to dance to songs chosen by another Dancer or chosen solely by the DJ.

60.    At all times while on the floor, Dancers must adhere to a strict policy set by Defendants. For example, a Dancer is forbidden to have or use her cell phone while she is working at Defendants' Club. Further, she is not permitted to chew gum while on the dance floor. If a Dancer is found to be chewing gum, she is fined $100.

61.    In short, Defendants' clubs maintain significant supervision and control over Plaintiff and members of the Classes and sets the rules governing the conditions under which Dancers work. These rules are applied uniformly to Plaintiff and all other Dancers.

62.    Further, Defendants' clubs determines the rate and method of payment Dancers receive, including but not limited to the percentage of tips that Defendants' clubs retain and the fact that Dancers do not receive any wages while working at the clubs.

63.    Dancers are permitted to consume a drink with a customer if she sees fit, however, Defendants limit these to interactions with club customers to three drinks. If a Dancer is found to have drank more, she is fined and may be terminated.

64.    Defendants' Clubs have been unjustly enriched to the detriment of the Classes by: (i) requiring Dancers to pay money out of their tips to subsidize the ordinary business expenses of the club; (ii) requiring Dancers to forfeit a portion of their tips to Defendants' Clubs; (iii) paying Dancers less than the mandated minimum wage (indeed, no wages whatsoever) while failing to comply with the requirements for doing so; (iv) failing to pay Dancers premium

overtime compensation for all hours worked in excess of forty in a work week; and (v) and requiring Dancers to advertise and promote the clubs, without compensating Dancers for their time.

65.　　At all times relevant to this Complaint, Plaintiff believed she was, and in fact was, an employee of Sabel's.

66.　　Evidence generally reflecting the number of uncompensated hours worked by Dancers is in the possession of Defendants' clubs.

67.　　While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of discovery.　Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer.　*See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

68.　　Plaintiff brings this action on behalf of the Nationwide FLSA Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b).　Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under PA State Laws.

69.　　The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).　The claims brought pursuant to PA State Laws may be pursued by all similarly-situated persons who do not opt out of the PA Class pursuant to Fed. R. Civ. P. 23.

70.　　Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.　While the exact number of the members of these

Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over one hundred individuals in each of the Classes.

71.    Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

72.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent.  Plaintiff and the members of the Classes work or have worked for Defendants' clubs and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

73.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Plaintiff and Dancers were improperly classified as independent contractors by Defendants;

(b)    whether Defendants failed to pay Dancers statutorily required wages for each hour worked;

(c)    whether Plaintiff and Dancers were required to pay Defendants, in cash, fees for each shift worked;

(d)    whether Defendants improperly retained any portion of Plaintiff's and Dancers' tips;

(e)    whether Defendants have failed to pay overtime compensation for all hours worked in excess of forty per work week;

(f)    whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

(g)    whether Plaintiff and members of the Classes are entitled to restitution and/or liquidated damages; and

(h)    whether Defendants are liable for attorneys' fees and costs.

14

74.    Plaintiff will fairly and adequately protect the interests of the Classes, as her interests are aligned with those of the members of the Classes.  She has no interests adverse to the Classes she seeks to represent, and she has retained competent and experienced counsel.

75.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

76.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from Defendants' illegal pay policies, practices and customs.

77.    Defendants have acted willfully and has engaged in a continuing violation of the FLSA and PA State Laws.

## FIRST CLAIM FOR RELIEF
### Fair Labor Standards Act
### (On Behalf of the Nationwide FLSA Class)

78.    Plaintiff, on behalf of herself and the Nationwide FLSA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

79.    At all relevant times, Defendants have had gross annual revenues in excess of $500,000.00.

80.    At all relevant times, Defendants have been and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

81.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Nationwide FLSA Class Members within the meaning of the FLSA.

82.    Pursuant to Defendants' compensation policies, rather than pay Dancers the federally-mandated wages, Defendants' improperly classify Plaintiff and other Dancers as independent contractors.

83.    As a result of Defendants' willful practices, Defendants' clubs were not entitled to pay Plaintiff and the members of the Nationwide FLSA Class less than the mandated wage for all hours worked.

84.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85.    Due to Defendants' FLSA violations, Plaintiff and the members of the Nationwide FLSA Class are entitled to recover from Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**Pennsylvania Minimum Wage Act 43 P.S. § 333.101 *et seq.***
**Minimum Wage Violations**
**(On Behalf of the PA Class)**

86.    Plaintiff, on behalf of herself and the members of the PA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

87.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

88.    At relevant times in the period encompassed by this Complaint, Defendants have had a willful policy and practice of improperly classifying Plaintiff and independent contractors and, consequently, failing to pay these individuals the applicable minimum wage for each hour worked.

89.     Pursuant to Defendants' compensation policies, Defendants improperly classified Dancers as independent contractors rather than pay Plaintiff and Dancers the Pennsylvania minimum wage.

90.     As a result of Defendants' willful practices, Defendants were not entitled to pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

91.     Defendants have violated and continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq*.

92.     Due to Defendants' violations, Plaintiff on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
**Pennsylvania Minimum Wage Act 43 P.S. § 333.101 *et seq*.**
**Overtime Wage Violations**
**(On Behalf of the PA Class)**

93.     Plaintiff, on behalf of herself and the members of the PA class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

94.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

95.     At relevant times in the period encompassed by this Complaint, Defendants have had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

96.     Pursuant to Defendants' policies and practices of classifying Plaintiff and Dancers as independent contractors, Plaintiff and the members of the PA Class were not paid overtime for all hours worked in excess of forty per week.

17

97.     Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.S.§ 333.101 *et seq.*

98.     Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid overtime wages, attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
### Pennsylvania Wage Payment Collection Law 43 P.S. § 260.1, *et seq.*
### (On Behalf of the PA Class)

99.     Plaintiff on behalf of herself and the PA Class Members, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

100.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

101.     Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

102.     As a result of Defendants' unlawful policies, Plaintiff and the embers of the PA Class have been deprived of compensation due and owing.

103.     Further, due to Defendants' policy of deducting amounts from the tips of Plaintiff and the PA Class to offset business expenses, Plaintiff and the PA Class were subject to improper deductions from their compensation.

104.     Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

**FIFTH CLAIM FOR RELIEF**
**PA Common Law – Unjust Enrichment/Quantum Meruit**
**(On Behalf of the PA Class)**

105.    Plaintiff, on behalf of herself and the PA Class Members, re alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

106.    Plaintiff and the members of the PA Class were employed by Defendants within the meaning of the PA State Laws.

107.    At all relevant times, Defendants have had a willful policy and practice of denying Dancers their full share of gratuities.

108.    During the class period covered by this Complaint, Defendants have had a willful policy and practice of having Dancers subsidize Defendants' business expenses by requiring Dancers to tip certain individuals a required minimum amount.

109.    Moreover, Plaintiff and Dancers were subjected to unlawful deductions from their gratuities.

110.    Defendants have retained the benefits of their unlawful deductions from the gratuities from Plaintiff and Dancers under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

111.    Defendants were unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

112.    Defendants retained the benefits of Plaintiff's and PA Class Members' time and promotional services under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

113.    Defendants were unjustly enriched by benefiting from the uncompensated time and efforts of Plaintiff and the PA Class Members to promote Defendants' businesses.

19

114.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the members of the PA Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the PA Class.

115.    Plaintiff and the members of the PA Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the Nationwide FLSA Class, and members of the PA Class, prays for relief as follows:

a) Designation of this action as a collective action on behalf of the Nationwide FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all Nationwide FLSA Class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

b) Designation of Plaintiff as representative of the Nationwide FLSA Class;

c) Designation of counsel of record as counsel for the Nationwide FLSA Class;

d) Certification of this action as a class action on behalf of the PA Class pursuant to Federal Rule of Civil Procedure 23;

e) Designation of Plaintiff as representatives of the PA Class;

f) Designation of counsel of record as counsel for the PA Class;

g) A Declaration that Defendants have violated the FLSA;

h) A Declaration that Defendants have violated the Pennsylvania Wage Payment and Collection Law;

i) A Declaration that Defendants have violated the Pennsylvania Minimum Wage Act;

j) A Declaration that Defendants have been unjustly enriched;

k) An Order enjoining Defendants' Clubs, its officers, agents, successors, employees, attorneys, assigns, and other representatives, and all those acting

in concert with it at its direction, from engaging in any employment policy or
practice which violates Pennsylvania Law;

l)  An Order requiring Defendants to make whole those persons adversely
    affected by the policies and practices described herein by providing
    appropriate back pay, and reimbursement for lost wages in an amount to be
    shown at trial;

m)  A Declaration that Plaintiff and members of the PA Class are entitled to the
    value, *quantum meruit*, of the services rendered by them to the Defendants;

n)  An Order requiring Defendants to pay back to Plaintiff and members of the
    PA Class the amounts representing Defendants' unjust enrichment and the
    value, *quantum meruit*, of the services rendered by them to the Defendants;

o)  All applicable statutory damages to Plaintiff, the FLSA Plaintiffs, and
    members of the PA Class;

p)  Appropriate liquidated damages to Plaintiff, the FLSA Plaintiffs, and members
    of the PA Class;

q)  Reasonable attorneys' fees and costs of action incurred herein; and

r)  Such other and further legal and equitable relief as this Court deems
    necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the Complaint.

Dated: December 7, 2018                    Respectfully Submitted,

                                    By:    _____
                                           R. Bruce Carlson, Esq.
                                           bcarlson@carlsonlynch.com
                                           Pa.ID No 56657
                                           Gary F. Lynch, Esq.
                                           glynch@carlsonlynch.com
                                           Pa. ID No. 56887
                                           Edward Ciolko, Esq.
                                           eciolko@carlsonlynch.com
                                           *pro hac vice forthcoming*

21

**CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) (412) 322-9243
(f) (412) 231-0246